Zane G. BUCKMAN, Plaintiff,

v.

BOMBARDIER CORPORATION,
Defendant.

No. 4:93–CIV–91–H.

United States District Court,
E.D. North Carolina,
New Bern Division.

May 30, 1995.

Jeff Newton, Beaufort, NC, for plaintiff.

J. Keith Tart and Robert H. Sasser, Raleigh, NC, for defendant.

### ORDER ON MOTIONS IN LIMINE

McCOTTER, United States Magistrate Judge.

This matter is before the court on the various motions *in limine* filed by both plaintiff and defendant in this case, which is set for jury trial to begin on Wednesday, May 30, 1995, in New Bern. The issues have been fully briefed, and upon those briefs and argument of counsel, the court enters the following order.

### DEFENDANT'S MOTIONS IN LIMINE

1. *BOMBARDIER'S MOTION TO EXCLUDE CERTAIN TESTIMONY AND EVIDENCE CONCERNING DAWN BUCKMAN'S LOSS OF CONSORTIUM*

Defendant seeks to exclude testimony by Dawn Buckman and any other of plaintiff's witnesses concerning her loss of consortium claim—i.e., how the accident involving her husband Zane Buckman has affected her life. Defendant asserts that, since Dawn Buckman has accepted defendant's offer of judgment, and has settled her claim, any evidence of Dawn Buckman's injury is irrelevant to the trial of Zane Buckman's claims; defendant alternatively asserts that, if relevant, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, under Fed.R.Evid. 403.

Plaintiff does not oppose the motion, but seeks only completion of the settlement arrangement before defendant is entitled to bar testimony regarding its subject matter. The parties have agreed that the court retains jurisdiction to enforce the settlement. *See Kokkonen v. Guardian Life Ins. Co. of America,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ Any testimony regarding the loss of consortium claim, and evidence of how the injury to Zane Buckman affected Dawn Buckman's life, is not relevant to the trial of Zane Buckman's claims. Furthermore, under Rule 408, evidence of the settlement between Dawn Buckman and defendant is inadmissible to prove defendant's liability. Defendant's motion *in limine* to exclude certain testimony of or about Dawn Buckman's claim is therefore ALLOWED. Dawn Buckman, and other plaintiff's witnesses, however, may testify as to how Zane Buckman's injury affected *his* marital life as part of his claims for damages, *if they have knowledge thereof.*

### 2. BOMBARDIER'S MOTION IN LI-MINE TO EXCLUDE OPINION TES-TIMONY OF MEDICAL EXPERTS AS TO FUTURE TREATMENT

 Defendant seeks to exclude any opinion testimony of medical experts regarding the future treatment and treatment requirements for Zane Buckman's recovery. Defendant asserts as grounds the fact that in discovery, plaintiff failed to adequately identify the health care providers who had advised plaintiff of the need for future treatment, and that plaintiff failed to supplement the answer that was given. The witness in question is Dr. David Marshburn, D.D.S., whose *de bene esse* videotaped deposition was taken by plaintiff's counsel on May 16, 1995, with consent of defendant's counsel. At that deposition, defendant's counsel objected to Dr. Marshburn's opinion testimony regarding plaintiff's future medical treatment; Dr. Marshburn continued to testify over the objection. Defendant claims that it was never provided with the substance of that testimony prior to the deposition, or even the identity of the deponent, and therefore was prevented from an effective cross-examination. Bombardier also contends that the plaintiff waited unreasonably until the end of discovery (after December 8, 1994) even to go see Dr. Marshburn.

The defendant sought this information through discovery and received a general answer. Although the plaintiff has not supplemented his discovery answer, the defendant, who is now claiming the answer to be inadequate never sought a motion to compel.

Plaintiff responds that he visited Dr. Marshburn on January 30, 1995, and received treatment; at that visit, Dr. Marshburn reiterated the need for future treatment, and in fact prepared several records of past and proposed treatment, which were provided to plaintiff's counsel on April 28, 1995. Plaintiff's counsel sent these records via facsimile to defendant's counsel on that same day, but defendant's counsel complains in the motion *in limine* that the fax transmission was illegible. Defendant's counsel did not request clearer copies. The court notes that the latest entry date on those records is March 10, 1995, and the earliest is January 30, 1995.

The question is whether, due to plaintiff's visiting Dr. Marshburn after discovery expired, due to the lack of advance notice of the substance of Dr. Marshburn's testimony during deposition, and due to the receipt of Dr. Marshburn's records in late April, 1995, the defendant is or will be prejudiced unfairly by the use of Dr. Marshburn's testimony concerning future medical treatment. Defendant avers that it is fully prepared for trial, except for this one element of damages for which plaintiff belatedly provided support. The court notes, also, that at no time did defendant file a motion to compel a supplementation to the answer to its Interrogatory No. 31, regarding the advice of medical personnel for future treatment.

Defendant consented to the deposition of Dr. Marshburn, and therefore knew of the deposition in advance; certainly in a personal injury suit, defendant should be aware of the probability of testimony regarding future treatment. Defendant has not demonstrated sufficient prejudice to exclude such testimony at this time. Defendant's motion to exclude testimony regarding future medical treatment is therefore DENIED. Defendant has not objected to Dr. Marshburn testifying as to the treatment he rendered to plaintiff; likewise, defendant has not objected, beyond a vague complaint in their motion, to the testimony of Dr. Richard Rizutti and Dr. E.G. Crawford, Jr. At the conference on this matter, defendant indicated that the motion *in limine* also went to Dr. Rizutti's testimony concerning his prognosis of plaintiff's condition. Defendant has not demonstrated any prejudice from the use of such testimony at trial, and the motion to exclude Dr. Rizutti's testimony (and Dr. Crawford's, as unaddressed by the motion) is also DENIED. Furthermore, if Dr. Marshburn is subpoenaed and testifies at trial, defendant will have an adequate opportunity to cross-examine him, and the motion to exclude becomes moot.

### 3. BOMBARDIER'S MOTION IN LI-MINE TO EXCLUDE EVIDENCE OF AND REFERENCE TO OTHER LAW-SUITS AND INCIDENTS

Bombardier anticipates that Buckman will attempt to offer into evidence other lawsuits

and incidents involving Sea–Doo brand water vessels—the *Welch, Burland, Selby,* and *Hunter* suits[1], and the *Cotter* suit recently filed in New York. Plaintiff lists as his trial Exhibit # 29 a "Summary of Other Incidents," to which defendant objected and here challenges.

The plaintiff proposes to call John F. Cotter at trial to "testify about the occasion on which he experienced a 1992 Sea–Doo XP cutting out in chopping water and resulting personal injury." The plaintiff proposes to call John G. Rossi, P.E., of Canton, New York, who presumably is working for Cotter. Mr. Rossi will testify "about the existence of a defect."

Plaintiff also listed Mike Hancock as a witness to "testify about occasions on which he experienced a 1992 Sea–Doo XP cutting out in choppy water." Hancock was not identified in discovery as a person with knowledge nor has plaintiff indicated his whereabouts. Plaintiff, in his response to this motion, agreed, and withdrew the name of Mike Hancock as a witness. To the extent the motion requires a decision, the court ALLOWS defendant's motion to exclude the testimony of Mike Hancock.

### Other Incidents

The defendant contends that the plaintiff cannot meet his threshold burden of showing that these "other incidents" are substantially similar to the facts and circumstances of this case. Hence, they are not relevant to the issues to be tried. Further, even if the plaintiff could make the requisite foundational showing of substantial similarity, the highly prejudicial nature of the information precludes its admission.

Plaintiff counters that the other incidents are relevant to show defendant's knowledge or notice that the engine stop switch was defective, to corroborate plaintiff's expert testimony, to show inadequate testing of the stop switch (and defendant's knowledge thereof), and to impeach defense witnesses. Plaintiff asserts that a low threshold of simi-

larity exists, and that such incidents easily clear that evidentiary hurdle.

■ Evidence of other accidents is highly prejudicial. Therefore, it is well settled that, before evidence of other accidents can be admitted into evidence, plaintiff must present a factual foundation for the court to determine that the other accidents were "substantially similar" to the accident at issue. *Renfro Hosiery Mills Co. v. National Cash Register Co.,* 552 F.2d 1061, 1068–1069 (4th Cir. 1977); *Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 762 (5th Cir.1989); *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261 (7th Cir.1988); *McKinnon v. Skil Corp.,* 638 F.2d 270, 277 (1st Cir.1981); *Julander v. Ford Motor Co.,* 488 F.2d 839, 847 (10th Cir.1973). This rule applies irrespective of whether the proponent attempts to introduce evidence of other accidents as proof of an alleged design defect, causation, or notice of a defect. *Brooks v. Chrysler Corp.,* 786 F.2d 1191, 1195 (D.C.Cir.) *cert. denied,* 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986).

■ An offer of evidence of other incidents, to support a claim that the present accident was caused by a defect that also caused the other incidents, requires that the plaintiff establish the following factors: (1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents. *See, e.g., Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1332 (8th Cir.1985); *Uitts v. General Motors Corp.,* 411 F.Supp. 1380, 1383 (E.D.Pa.1974), *aff'd without opinion,* 513 F.2d 626 (3d Cir.1975).

Plaintiff asserts that the other incidents referenced in his Exhibit # 29 involved the identical model as that driven by plaintiff at the time of the accident, and involved stop switches, the part alleged to be defective here. The court is unable at this time to verify or disprove that assertion, without further foundation. The court is required to examine sufficient facts to make its own de-

---

1. According to his response to this motion, plaintiff does not intend to offer evidence of these four cases at trial. Accordingly, defendant's motion to exclude such evidence of these four cases is ALLOWED.

termination whether the products and defects involved in other incidents were identical or substantially similar. *Renfro*, 552 F.2d at 1068–69. Defendant's motion to exclude evidence of "other incidents" as referenced in plaintiff's Exhibit # 29 is therefore DENIED.

### Other Lawsuits

■ Plaintiff intends to offer evidence of the *Cotter* case filed in February, 1995, in New York, as well as the testimony of the plaintiff in that action, John Cotter, and John Rossi, a professional engineer who apparently is testifying as Mr. Cotter's expert witness in the *Cotter* case. Defendant maintains that such evidence and testimony would result in unfair prejudice to the defendant, as well as confusion of the issues, and a misleading of the jury. Plaintiff points out that although the *Cotter* complaint was filed in February, 1995, defendant had notice of Cotter's claim as early as July 22, 1992, from a letter written by Cotter's attorney to defendant.

As noted above, the factual foundation for a finding of "substantially similar" circumstances between the plaintiff's accident and that involving John Cotter is, at this time, insufficient; however, should the proper foundation be laid at trial concerning the four factors noted above, John Cotter should be permitted to testify. Plaintiff already indicates that the product involved was identical to that of plaintiff, and that the defect alleged was also identical. Defendant's motion to exclude the testimony of John Cotter is therefore DENIED; the court however fails to see the relevance of introducing the contents of such evidence as the Complaint in the *Cotter* case (if plaintiff is so inclined), and fails to see how such evidence would pass the balancing test under Rule 403.

■ John Rossi, however, should not be permitted to testify. He has not been disclosed as an expert witness *in this case,* and the substance of his proposed testimony is vague at best ("Mr. Rossi will testify about the existence of a defect"). Defendant has not had the opportunity to depose Mr. Rossi, nor has defendant had notice of Rossi's expert opinion in this or the *Cotter* case. Because his testimony as an expert would also tend to confuse the issues and mislead the jury, defendant's motion to exclude the testimony of John Rossi *as an expert witness* is ALLOWED; Rossi may testify as a lay fact witness, if he has such relevant knowledge.

### 4. DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE VENTURI RECALL AND THE ENGINE STOP SYSTEM RECALL

Defendant moves to exclude evidence concerning recalls of Bombardier products: first, that contained in plaintiff's trial Exhibit # 45 (August 25, 1993, owner recall letter re: Venturi arm fasteners becoming loose), and second, that contained in plaintiff's trial Exhibit # 74 (May 22, 1992 owner recall letter re: stop switch lack of capacitor and no-steer situations). Defendant asserts as grounds for exclusion that these recalls were subsequent remedial measures, excludable under Fed.R.Evid. 407, that the Venturi recall is irrelevant to plaintiff's claims, and that admission of recall evidence fails the test of Fed.R.Evid. 403, and would result in unfair prejudice.

■ Plaintiff first states that he intends to use evidence of the Venturi arm recall (Exhibit # 45) *only* to impeach the testimony of defendant's witnesses. To the extent the motion requires court action, defendant's motion to exclude evidence of the Venturi arm recall is DENIED; however, plaintiff may not introduce such evidence during his case-in-chief, and may only introduce such evidence to impeach defense witnesses upon proper foundation.

■ Plaintiff next states that the engine stop switch recall is admissible, particularly to show feasibility of precautionary measures.

Rule 407 states

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving

ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The court notes at the outset that Rule 407 applies to strict liability as well as negligence cases. *Werner v. Upjohn Co. Inc.,* 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981).

Objectively, the engine stop switch recall letter functions as a subsequent remedial measure under Rule 407, regardless of whether it addresses conduct or a defect in the product. Plaintiff is therefore barred from introducing evidence of the engine stop switch recall, unless it is offered to show feasibility of precautionary measures (or other grounds under the second sentence of Rule 407), *if controverted.* At this point, there is no evidence that feasibility is controverted by the defendant; in the absence of controversy, plaintiff may not introduce evidence of the recall in his case-in-chief. Rule 407 governs, and if the plaintiff meets the requirements of that rule, evidence of the stop switch recall letter may be introduced. Plaintiff may also use such evidence for impeachment purposes, if proper. Defendant's motion to exclude evidence of the engine stop switch recall is DENIED.

**5.** *DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OFFERED BY PLAINTIFF'S EXPERT, THOMAS C. EBRO*

Bombardier moves to exclude evidence offered by plaintiff's witness, Thomas C. Ebro, as to alleged defects in the subject Sea–Doo, both in testimony and videotaped forms. Bombardier contends that Mr. Ebro's testimony as to alleged defects lacks proper factual foundation and must be excluded under Rules 104(a) & 702, Fed.R.Evid. and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Plaintiff counters that Ebro's opinions are based on facts, data, and testing which meet the *Daubert* test for admissibility. Ebro's opinion covers four areas: (1) the stop switch malfunction; (2) the lack of rudder and keel; (3) the crashworthiness of the

Sea Doo; and (4) the lack of built-in signaling device.[2]

Daubert, in displacing the test of admissibility of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923) with that of Rule 702 of the Federal Rules of Evidence, set forth a two part test which must be met in order for *scientific* expert witness evidence or testimony to be admitted. First, the expert testimony must consist of "scientific knowledge." Second, the evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert,* —— U.S. at ——, 113 S.Ct. at 2795.

The Court's analysis began with the requirement that an expert's evidence purporting to pertain to scientific knowledge must be founded in the scientific method (i.e., reviewing data, generating hypotheses, and testing them to see if they can be falsified). Expert opinion must have "evidentiary reliability" (i.e., whether the application of a principle produces consistent results), which is based on "scientific validity" (i.e., whether the principle supports what it purports to show, also called trustworthiness). The Court cautioned that "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions they generate." —— U.S. at ——, 113 S.Ct. at 2797. In determining reliability, the Court set forth five non-exclusive factors:

1. Whether a theory or technique can be and has been tested (also termed "falsifiability").

2. Whether the theory or technique has been subject to peer review and publication. Submission to the scrutiny of the scientific community increases the likelihood that substantive flaws in methodology will be detected; however, propositions that are new, too particular, or limited in interest should not be rejected on that basis alone.

3. Whether there is a known or potential rate of error.

---

**2.** Plaintiff has abandoned that part of Ebro's opinion dealing with crashworthiness. Defendant's motion to exclude that portion of Ebro's opinion dealing with crashworthiness is therefore ALLOWED.

4. Whether standards controlling the technique's operation exist and are maintained.

5. Whether the theory or technique is generally accepted in the relevant scientific community. "[A] known technique that has been able to attract only minimal support within the community may properly be viewed with skepticism." —— U.S. at ——, 113 S.Ct. at 2797.

Second, the Court found that Rule 702 requires findings by the trial court that the evidence of the expert is based on scientific knowledge that is relevant. Rule 702 provides that such expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." Such evidence is relevant if it is "sufficiently tied to the facts of the case." —— U.S. at ——, 113 S.Ct. at 2797. Relevancy "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.*

### THE STOP SWITCH

### A. Scientific Knowledge

Plaintiff asserts that Ebro's opinion is not that of accident reconstructionist, but is instead one based on a comparative test to determine whether the Sea Doo would cut engine in choppy water.[3] The question under *Daubert*, then, is whether this comparative test is founded in the scientific method, using scientific principles and methods, thereby constituting "scientific knowledge."

### 1. Testing

■ *Daubert* suggests examining whether the theory advanced by the expert opinion has been tested, which suggestion is somewhat awkward here, in that it requires an examination whether a testing has been tested. Defendant argues that Ebro did not conduct any pre-testing examination of the Sea Doo to determine whether obvious alternative causes existed for the engine cutoff, and that this lack of preparation was due to Ebro's inexperience (or lack of qualification)

with electrical engineering. Plaintiff responds that Ebro did examine the Sea Doo before testing, and did rule out alternative causes of the engine cutoff through his review of the history of the Sea Doo and his own observations of the vehicle during testing.

The theory Ebro was testing was whether the engine of the subject Sea Doo cut off more often or more readily than did an identical Sea Doo with a stop switch capacitor installed. This he did through a simple comparative test of two such watercraft; however, he never tested the underlying assumption of the theory—that the stop switch sensitivity was the cause of this particular engine cutoff and accident. His test was merely corroborative. He designed an experiment to *verify* a hypothesis, rather than to *test* it. He did not test the subject Sea Doo with a capacitor installed, to see if such adjustment "cured" the problem; then again, defendant apparently did not permit such an alteration to be made prior to testing by Ebro.

Ebro's testing consisted, in short, of a comparative test using the Sea Doo in question and a highly similar control vehicle fitted with a capacitor. The principle of the experiment, though weak and based on an untested assumption, is a scientifically valid exercise of the use of controls and procedures. The next question is whether the methods of the experiment are similarly valid.

■ The Atlantic Ocean at Biscayne Bay, Florida is not the Pamlico River at Beaufort County, North Carolina. The wake behind a small ski boat or personal watercraft on the Pamlico does not equal that behind a 50–foot yacht on Biscayne Bay. A chop of six inches (according to the accident report) is not the same as a chop of one to two feet (as evident in the videotape of Ebro's test). In short, the testing conditions were significantly different from those reported on May 17, 1992 on the Pamlico River. The differences in this case go not only to the weight of the

---

**3.** Testimony of accident reconstruction falls outside the scope of *Daubert*. *See Robinson v. Missouri Pacific R.R. Co.*, 16 F.3d 1083, 1088 (10th Cir.1994) (train accident reconstruction based

upon science of physics); *Datskow v. Teledyne Continental Motors*, 826 F.Supp. 677 (W.D.N.Y. 1993) (accident reconstruction video used, with instruction, to support expert's opinion).

evidence, but also the admissibility, for Ebro's testing conditions for that portion of the videotape showing the Sea Doo riding in the boat's wake cannot fairly be said to even approximate those known to exist at the time of the May 17, 1992 accident. Even if Ebro's opinion concerns only whether the Sea Doo cuts out in choppy water, the extent of the chop or wake must reasonably approximate that existing at the time of the incident in question. The court finds that the methods of testing this theory are not valid as regards that portion of the videotape (and opinion) showing the Sea Doo driven through the wake of the leading boat.

On the other hand, that portion of the tape and opinion regarding the Sea Doo in the normal chop of Biscayne Bay are within a reasonable estimate of the conditions on the Pamlico on May 17, 1992. The court finds that the methods so used during this portion of the testing were valid.

### 2. Peer Review

*Daubert*'s factors do not fit all analyses of expert opinions; here, the idea of peer review of Ebro's theory is inappropriate, and although plaintiff can show no instance of peer review here, the court does not consider this factor.

### 3. Rate of Error

██ Because of the differences in conditions between those reported on the day of the accident, and those portrayed and reported by Ebro during his testing, the potential rate of error within the test itself could be quite high. Although no court requires an exact duplication of standards and conditions, there should be at least an attempt at duplication in order to properly isolate and test the theory in question. The rate of error, however, cannot be known through statistical calculation, unlike other disciplines.

### 4. Standards

The standards controlling the testing or development of the opinion were set by Ebro

himself, the designer of the experiment. No objective standards could in fairness be said to apply to such an experiment.

### 5. Acceptance

The former *Frye* test of "general acceptance within the relevant scientific community" operates as *Daubert*'s final factor to consider. Plaintiff points to Ebro's testimony and experiments in several cases as a product safety consultant as some evidence of general acceptance. But Ebro is not in and of himself a community. There being no relevant scientific community for such experiments, this factor is not considered by the court.

In light of the foregoing analysis, the court finds that the portion of Ebro's testimony and videotaped experiment concerning the Sea Doo's operation in the wake of the boat used in the experiment is without valid scientific principles and methodology, and therefore fails the first prong of the *Daubert* test. Defendant's motion to exclude Ebro's expert testimony and experiment evidence as to this portion of the testimony and experiment (which specifically includes demonstration of the "control" capacitor-equipped Sea Doo during this portion) is therefore ALLOWED. The other portion of the opinion and experiment dealing with the engine stop switch, that of both Sea Doos' operation in the regular chop of the experiment site, appears to have a valid underlying principle and reasonable methods used to test Ebro's theory.

### B. Relevance

██ As to the remaining portion of Ebro's evidence, the court finds that it is relevant to the issue whether the lack of a capacitor attached to the engine stop switch caused the accident on May 17, 1992. The experiment and opinion based on the experiment and other sources tends to show that the presence of a capacitor affected the operation or sensitivity of the cutoff switch. Defendant's motion to exclude the remaining portion of Ebro's expert testimony and experiment evidence [4] concerning the stop

---

4. Only Ebro's videotaped experiment was supplied to the court in connection with this motion. Counsel has indicated that there are also still

photographs taken by Ebro during the experiment which constitute further opinion testimony; until the court is able to review these photo-

switch is therefore DENIED.[5]

### THE RUDDER AND KEEL DESIGN AND SIGNAL DEVICE

 Ebro advances a theory also that a rudder and keel redesign or attachment would have assisted in preventing the accident by giving the driver (plaintiff) more stability and steering ability.

Under the reasoning set out in *Stanczyk v. Black & Decker, Inc.*, 836 F.Supp. 565 (N.D.Ill.1993), the court finds that this testimony does not meet the *Daubert* standard for admissibility. Even though defendant has listed photographs of such an after-market attachment as the one Ebro alludes to, Ebro indicated nowhere that he had done any testing on such a design in practice. An untested "guess" at a safer design is the type of hypothetical science that *Daubert* sought to exclude. Defendant's motion to exclude Ebro's testimony regarding a rudder-keel design is therefore ALLOWED.

Similarly, Ebro nowhere indicates that he has tested a built-in design for a signaling or whistle device for the Sea Doo. Again, this testimony amounts to scientific conjecture, and not scientific knowledge, under *Daubert* and *Stanczyk*. Defendant's motion to exclude Ebro's testimony as to the signaling device is therefore ALLOWED.

### PLAINTIFF'S MOTIONS IN LIMINE

#### 1. Motion in Limine (Failure to Sue Others)

Plaintiff moves to exclude mention that other parties, Park Boat Company (the retailer of the Buckman Sea–Doo), the retailer of the Sheppard's Sea–Doo, Scott Sheppard, or anyone else has not been sued. The defendant Bombardier, the manufacturer of the Sea–Doo, contends that it is relevant that Park Boat Company, the retailer of the Sheppard Sea–Doo, and Scott Sheppard have not been sued. The general rule in admiralty is that "a plaintiff may recover full damages from any one or two or more joint tort feasors." *United States Fire Insurance Co.*

*v. Allied Towing Corp.* 966 F.2d 820, 830 (4th Cir.1992).

Defendant consents to this motion subject to the express condition that plaintiff, plaintiff's counsel, and all witnesses called on his behalf be prohibited from mentioning any contribution claim available to defendant against Scott Sheppard or defendant's failure to assert said claim. Subject to this condition, the plaintiff's motion in limine is ALLOWED.

#### 2. Motion in Limine to Exclude Evidence of Negligence of Non–Party, Scott Sheppard, i.e., that his Alleged Negligence was a Superseding and/or Intervening Cause of the Collision or that it Combined With Plaintiff's Alleged Negligence to be the Sole and Proximate Cause

 Plaintiff is seeking to exclude any reference at trial to the negligence of Scott Sheppard as a superseding and/or intervening cause of the accident giving rise to this lawsuit or that his negligence combined with the plaintiff's alleged negligence to be the sole and proximate cause of the collision. Plaintiff first contends that the superseding cause doctrine is inapplicable in maritime cases. In support of this proposition, plaintiff cites only *Hercules, Inc. v. Stevens Shipping Company*, 765 F.2d 1069 (11th Cir. 1985).

In *Hercules*, the 11th Circuit held that under a "proportional fault" system, the application of the intervening negligence doctrine was improper. *Id.* at 1075. In support of its holding, the *Hercules* court apparently relied on the United States Supreme Court's decision in *United States v. Reliable Transfer Company*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). In *Reliable Transfer*, the Supreme Court discarded the long-standing admiralty rule of divided damages, which required the equal division of property damages whenever both parties were found guilty of contributing fault, in favor of the principle that, whenever possible, damages

---

graphs, to determine their admissibility, their exclusion would be premature.

**5.** The parties are referred to that portion of this Order addressing the motion to exclude evidence of the recalls, above.

should be allocated according to comparative fault. *Id.* at 411, 95 S.Ct. at 1715.

The *Hercules* decision has been rejected by three circuits. In *Lone Star Industries v. Mays Towing Company, Inc.*, 927 F.2d 1453 (8th Cir.1991), the owner of a barge brought an action against a towing company to recover for the loss of the barge's cargo. The Eighth Circuit held that the barge owner's negligence in failing to inspect the stern compartment prior to unloading and in having only one person present during the unloading was a superseding cause of the barge's sinking.

The *Hercules* decision was rejected by the Fifth Circuit in *Donaghey v. Ocean Drilling & Exploration Company*, 974 F.2d 646 (5th Cir.1992). In *Donaghey*, a personal injury action was brought by a worker on an oil drilling vessel against the manufacturer of a component which was undergoing repair at the time of the accident. The Fifth Circuit held that a material question of fact existed as to whether the action of the vessel's crew, in attempting to repair the component using tongs with insufficient strength, was a superseding cause of the injury.

In addition to the Eighth Circuit and the Fifth Circuit, the Ninth Circuit has also adhered to the view that the superseding cause doctrine remains applicable to admiralty cases. *See Exxon Company v. Sofec. Inc.*, 54 F.3d 570 (9th Cir.1995) (a superseding cause may act to cut off liability for antecedent negligent acts in admiralty cases); (*Hunley v. Ace Maritime Corporation*, 927 F.2d 493 (9th Cir.1991)) (an intervening force supersedes prior negligence where the subsequent actor's negligence was neither normal nor reasonably foreseeable); *Protectus Alpha Navigation Company v. North Pacific Grain Growers*, 767 F.2d 1379, 1384 (9th Cir.1985) (indicating in dicta that application of the principle of superseding cause in a maritime case would not be improper).

The majority view is that the superseding cause doctrine must be applied in admiralty cases where the facts reasonably support it. *See also,* T. Schoenbaum, *Admiralty & Maritime Law* § 5–3 at 165–66 ("The doctrine of superseding cause ... is properly applied in admiralty cases.... [T]he superseding cause doctrine can be reconciled with comparative negligence. Superseding cause operates to cut off the liability of an admittedly negligent defendant, and there is properly no apportionment of comparative fault where there is an absence of proximate causation"); *Nunley v. M/V Dauntless Colocotronis,* 727 F.2d 455 (5th Cir.) *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984) (directing district court to reconsider on remand whether negligence of parties who failed to mark a shipwreck constituted a superseding cause absolving the parties causing the shipwreck of liability); *Cities Service Company v. Lee–Vac, Ltd.,* 761 F.2d 238 (5th Cir.1985) (although manufacturer of socket used in connecting tug to barge may have been negligent, it would not be liable to party injured by socket if intervening act of third party was sole proximate cause of injury). The question of Sheppard's negligence here goes to the issue of causation, and not to that of damages, as apportionment is improper when it would involve assigning liability to a non-party.

■ Plaintiff argues in the alternative that the doctrine does not apply in the present case due to the fact that any intervening negligence by Scott Sheppard could have been reasonably anticipated by defendant. The only support for this proposition is a reference to the deposition of David Price, defendant's product safety consultant, in which he testified that "the most important situation, as identified in the letter and the bulletin, I believe, was the surrounding circumstance as to where that ignition cut off, if it were to occur, and the hazards around that" and that "in a congested area, as we very clearly maintained in our notification to the consumers and the dealers, that could lead into a dangerous situation and a hazardous situation. Could lead, not necessarily—not because of the product, but because the congestion around there." David Price Deposition 11, 57–58.

There has been no showing, nor any indication of a strong showing at trial, that the area in which the plaintiff was riding the Sea Doo was congested, in accordance with Price's assumption. Without such an element, Price's testimony does not lead to the

conclusion that such an accident could not have been foreseeable.

Plaintiff's motion to exclude evidence of the negligence of Scott Sheppard is DENIED. Questions concerning allocation of liability or determination of causation are reserved until such time as jury instructions are considered by the court.

### 3. *Plaintiff's Motion to Exclude Evidence of Alleged Delay in Submitting Accident Report*

■ The plaintiff moves to exclude evidence that there was a delay in submitting the accident report.

In North Carolina inland waters, reports in injury cases must be submitted within 48 hours. When the operator of a vessel cannot submit the accident report, the owner shall submit the report. North Carolina Boat Owners Guide at 23 (January 1992).

In the present case, the plaintiff could not submit an accident report within 48 hours because he was in Pitt Memorial Hospital at the time. Since the plaintiff could not submit the accident report within 48 hours, it became the plaintiff's father's duty, as owner of the vessel, to submit the report. Any delay on the part of the plaintiff's father in submitting the report should not be imputed to the plaintiff.

The plaintiff was injured on May 17, 1992. He and his father met with a Wildlife Officer on May 28, 1992. Plaintiff did not tell the officer that the engine of his Sea–Doo cut off. Plaintiff's father received a recall notice on May 29, 1992, advising that the engine stop system could cut off in certain water conditions. Although plaintiff apparently signed his Boating Accident Report on June 1, 1992, he did not return it to the State until on or after July 12, 1992.

Plaintiff's delay in submitting a boating accident report is relevant on the issues of bad faith, improper motivation, and fabrication. Its probative value is not outweighed by any prejudice to the plaintiff. Plaintiff's motion in limine to exclude evidence of a delay in submitting a boating accident report is DENIED.

### 4. *Plaintiff's Motion to Exclude Evidence of Failure to Determine Cause of Accident*

■ Plaintiff contends that he was under no legal duty or obligation to personally determine the actual cause of the incident giving rise to the complaint and that his failure to personally conduct such investigation does not amount to a violation of Rule 11 of the Federal Rules of Civil Procedure.

Plaintiffs apparently misunderstands defendant's reasons for introducing this evidence. Defendant does not contend that plaintiff's failure to conduct an adequate investigation following this accident constitutes a violation of Rule 11. Rather, defendant believes that this evidence is highly relevant to plaintiff's credibility.

Defendant contends that the evidence will show that for approximately two weeks following the accident, plaintiff made no mention of the fact that the engine of the Sea–Doo had allegedly cut off, and that during this time period, plaintiff was more concerned with determining whether there was liability insurance applicable to the Sea–Doo operated by Scott Sheppard, the party whose watercraft struck the plaintiff's Sea–Doo. In fact, no intimation was made by the plaintiff that the accident could have been caused by a defect in his Sea–Doo until after plaintiff had received a recall notice on or about May 29, 1995, from Bombardier regarding a possible sensitive stop switch in the Sea–Doo.

Bombardier contends that this evidence is highly relevant to plaintiff's credibility and demonstrates plaintiff's true belief that this collision was caused by Sheppard's "following too closely" rather than by any conduct on the part of Bombardier. Based on the foregoing, plaintiff's motion in limine regarding efforts to determine the cause of the collision is DENIED.

### 5. *Plaintiff's Motion to Exclude Evidence on Alleged Lack of Insurance*

■ The plaintiff moves to exclude evidence that the plaintiff and/or his father allegedly accused Scott Sheppard and/or his father of being irresponsible because there was allegedly no insurance on the Sheppard Sea–Doo.

Rule 411 of the Federal Rules of Evidence, in pertinent part, provides that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."

The hypothesis that an uninsured person is less responsible than an insured person has little or no probative force, and even if it did, it is likely that this line of proof would prove prejudicial and would probably be excluded under Rules 401 to 403 even without Rule 411. *Weinstein's Evidence,* 411[02] at 411–5 (1986).

Rule 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully" but that the existence or lack of existence of liability insurance may not be excluded when offered for some other purpose. *See Green Construction v. Kansas Power & Light,* 759 F.Supp. 740, 743 (D.Kan. 1991), *aff'd,* 1 F.3d 1005 (10th Cir.1993) (evidence of existence of liability insurance while inadmissible to show negligence may be admissible for other purposes where the fact of insurance has an arguably independent, substantive evidentiary relevance).

In the present case, defendant intends to show at trial that or approximately two weeks after this incident, plaintiff and his family solely blamed Sheppard for this accident and did not attribute any responsibility for the collision to defendant. The evidence is further predicted to show that plaintiff and his family first considered the possibility of bringing an action against defendant only after learning that there was no insurance coverage applicable to Sheppard's watercraft.

The policy underlying Rule 411 is the desire to avoid informing the jury that a party is covered by liability insurance so as to prevent a jury from imposing excessive damages against the party out of their belief that the insurance company—rather than the party—will have to pay the judgment. In the present case, the evidence sought to be excluded by plaintiff does not concern the existence of liability insurance applicable to plaintiff or defendant. Rather, this evidence concerns statements made which refer to the lack of liability insurance covering a third party. Since Sheppard is not a party to this lawsuit, the admission of evidence concerning his lack of liability insurance will not prejudice him in any way. Therefore, the policy underlying Rule 411 is not implicated by the admission of this evidence. Furthermore, defendant intends to offer this evidence simply to attack the plaintiff's credibility and not to show that Sheppard's lack of liability insurance makes it more or less likely that he was negligent.

The plaintiff's motion in limine regarding Sheppard's lack of insurance is DENIED; however, counsel should notify the court prior to introducing such evidence or eliciting testimony regarding this evidence, in order for the court to revisit this issue.

**6.** *Plaintiff's Motions to Exclude Exhibits*

The plaintiff moves to exclude Defendant's Exhibits ## 11A–D, 118 and 123 on the grounds that these exhibits have not been provided to the plaintiff in violation of Local Rule 24.03(c), E.D.N.C. *See generally, Gardner v. Safeway Stores, Inc.,* 99 F.R.D. 258 (D.Kan.1983). The challenged exhibits are nothing more than reformulations of material that the plaintiff already has.

Finally, defendant's Exhibit No. 123 will not be offered as evidence. The plaintiff's motion to exclude Defendant's Exhibits Nos. 11A–D and 118 is DENIED. The defendant has voluntarily withdrawn Exhibit No. 123.

**7.** *Plaintiff's Motion to Exclude Testimony of Certain Defense Witnesses*

The plaintiff moves to exclude evidence from the defendant's witnesses David Price, Tim Vaughn, Claude Gagnon, Sheriff Nelson Sheppard, Paul Buckman, or Larry Smithwick, as to the operational characteristics of Sea–Doo watercraft, engineering work regarding Sea–Doo watercraft, or the effects of maintenance or lack of maintenance performed on Sea–Doo watercraft.

In the pre-trial order, the defendant states that Price, Vaughn, Gagnon, Buckman, and Smithwick will testify as to the operational characteristics of Sea–Doo watercraft; Sheppard, as to the operational characteristics of

personal watercraft; and Gagnon, as to his engineering work and testing which led to the recall. The defendant has not identified these individuals as expert witnesses.

The plaintiff contends that since these witnesses have not been identified as experts, they are not permitted to express opinions beyond the realm of common experience and which require the special skill and knowledge of an expert.

■ Rule 701 of the Federal Rules of Evidence states in part that lay witness opinion testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The purpose of Rule 701 is to allow non-experts to give an opinion "when as a matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to the court or the jury." *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846 (10th Cir.1979) (citing Weinstein's Evidence 701[02] (1977)). "Generally, however, this rule does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Id.* Opinion testimony of a layman will be admissible if:

(1) The witness has personal knowledge of the facts from which the opinion is to be derived;

(2) There is a rational connection between the opinion and the facts upon which it is based; and

(3) The opinion will be helpful in understanding the testimony or determining a fact in issue.

*Swajian v. General Motors Corp.,* 916 F.2d 31, 36 (1st Cir.1990).

■ A lay witness in a federal court is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived. *Teen–Ed, Inc. v. Kimball International, Inc.,* 620 F.2d 399, 403 (3d Cir.1980).

The plaintiff contends that the witnesses designated to testify about the operational characteristics of Sea–Doo watercraft, engineering of Sea–Doo watercraft, or the effects of a lack of certain maintenance on Sea–Doo watercraft, would be testifying about matters beyond the realm of the common experience of the jury. These witnesses would require specialized knowledge or experience in order to testify on these matters, requiring defense counsel to lay a foundation to qualify them to testify as experts.

In addition, since none of these persons, except for Paul Buckman, has ever operated the subject Sea–Doo, any testimony regarding the operational characteristics of the subject Sea–Doo or the effects of a lack of maintenance on the subject Sea–Doo, would require hypothetical or opinion questioning, which testimony would fall under the purview of an expert and not a lay witness. Fed. R.Evid. 602.

■ In this case, the employees of Bombardier, Inc.—David Price, Tim Vaughn and Claude Gagnon—can testify and offer opinions based on their own experiences as to the operational characteristics, engineering, and the effects of lack of maintenance on Sea–Doo watercraft. "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience is a sufficient foundation for lay opinion testimony." *Burlington Northern R. Co. v. Nebraska,* 802 F.2d 994 (8th Cir.1986) (citing *Farner v. Paccar, Inc.,* 562 F.2d 518, 520 (8th Cir.1977) (allowing lay opinion testimony of truck operator with extensive experience in the industry regarding the proper use of safety chains); *Gravely v. Providence Partnership,* 549 F.2d 958, 961 (4th Cir.1977) (allowing lay opinion testimony of company's president regarding relative safety of conventional versus spiral staircases). The testimony of Bombardier's employees will be helpful to a jury, who would normally not have the benefit of such experience and knowledge.

Sheriff Sheppard, Paul Buckman, and Larry Smithwick can offer opinion testimony based upon personal knowledge as to the operational characteristics of personal watercraft.

The plaintiff's motion in limine for an order precluding the use of lay opinion testimony of persons not designated as "experts" remains under advisement until testimony from these witnesses develops at trial.

### 8. Plaintiff's Motion for Modification to Pre-trial Order

On May 1, 1995, during the pre-trial conference, plaintiff's counsel objected to the defendant's listing of the Operator's Guide, Defendant's Exhibit No. 2, for the subject Sea–Doo on the grounds that the defendant failed to designate which portions of the lengthy document will be offered into evidence at trial. The court overruled the plaintiff's objection but permitted the plaintiff to object to any portions of the guide at a later date. Plaintiff has listed those portions of the Operator's Guide which plaintiff finds objectionable. The Court ALLOWS the plaintiff's motion to modify the pre-trial order.

### 9. Plaintiff's Motion to Exclude Evidence of Causation

The plaintiff moves to exclude evidence regarding the opinions of any witnesses not designated as experts as to the cause or causes of the collision.

The plaintiff seeks to exclude opinions that the collision was caused by (1) alleged negligence on the part of the plaintiff, (2) alleged negligence on the part of Scott Sheppard, (3) alleged failure to perform certain maintenance on the subject Sea–Doo, (4) alleged disconnection of the safety tether on the subject Sea–Doo, (5) plaintiff's alleged pressing of the stop switch on the subject Sea–Doo, or (6) plaintiff's performing of an alleged 180–degree maneuver on the subject Sea–Doo.

■ Rule 604 provides in part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

'... [T]he rule requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have ac-

tually observed the fact' is a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information.'

Notes of Advisory Committee on Fed.R.Evid. 602 (quoting McCormick § 10, p. 19).

Consequently, any persons who were not actual witnesses to the collision, including David Price, Tim Vaughn, Claude Gagnon, Larry Smithwick, Kent Buckman, Sr., Paul Buckman, and Sandra Buckman, may not testify as to the cause of the collision. To that extent, plaintiff's motion is ALLOWED. As to the testimony of Marshall Myers, plaintiff's motion is DENIED, as he is an investigating officer, and his opinion may be admissible under Rule 803(8) (see below).[6]

Rule 701 states that a non-expert's testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Even though Rule 704 abolishes the per se rule against testimony regarding ultimate issues of fact, it "does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir.1983) (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir.1977). According to *Owen*, lay testimony as to the legal cause of the collision, i.e., whether the plaintiff was contributorily negligent, is not admissible. *Id.*

■ Plaintiff seeks to exclude any testimony or other evidence regarding the opinions of any witnesses not designated as experts as to the cause of the collision giving rise to this lawsuit. Specifically, plaintiff seeks to exclude any references to the boating accident reports which were filled out as

---

**6.** Counsel have not addressed whether Myers' testimony is admissible as an investigating officer

preparing an evaluative report. See, *infra*, discussion of accident reports.

a result of this incident. These reports were completed several weeks after the incident and contain statements about the incident from the plaintiff and Scott Sheppard. The reports further contain a summary of the investigation of the incident that was performed by Marshall Myers, the investigative officer for the North Carolina Wildlife Resources Commission. These reports are required by law to be made in any case where a boating accident results in a loss of life or requires significant medical treatment to an individual.

The reports are admissible under the "public records and reports" exception to the hearsay rule contained in Rule 803(8) since they are reports of a public office setting forth factual findings resulting from an investigation made pursuant to authority granted by law. *See Foster v. General Motors Corporation,* 20 F.3d 838 (8th Cir.1994) (police report prepared by investigating officer was admissible in products liability action alleging that automobile accident was caused by design defect under hearsay exception for public records). As to the factual findings in the reports, plaintiff's motion is DENIED.

■ As to those portions of the reports which contain "evaluative" opinions as to the cause of the accident, the Supreme Court's opinion in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) controls. The Court there held that

> portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.

*Id.* at 170, 109 S.Ct. at 450. Provided a proper factual foundation is laid for each of the witnesses whose reports are at issue (i.e., demonstrating the existence and extent of a factual investigation), and that such foundation demonstrates the trustworthiness[7] of the sources of information, those portions of

the reports containing opinions as to the cause of the accident are admissible. Plaintiff's motion to exclude evidence of opinions of causation in these reports is therefore DENIED.

■ Furthermore, those portions of the boating accident reports which contain statements from the plaintiff are also admissible since these statements qualify as "admissions by party-opponents" and are therefore not considered hearsay pursuant to rule 801(d)(2). Plaintiff's motion to exclude statements made by plaintiff in his report is therefore DENIED.

### 10. *Motion in Limine (Prior Conduct of the Plaintiff)*

■ The plaintiff moves to exclude evidence regarding the plaintiff's conduct on the subject Sea–Doo prior to the events leading directly up to the collision.

Defendant contends that in the discovery depositions of certain persons who were present at the scene on the date and time of the collision, there are statements that persons, including the plaintiff, were performing 180–degree and 360–degree maneuvers on personal watercraft in the area prior to the collision. Many of these statements lack identification of the person performing those maneuvers. In addition, there are statements in the depositions that the plaintiff had performed 180–degree and 360–degree maneuvers on the subject Sea–Doo on dates prior to May 17, 1992.

> "(a) Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, ... (b) Evidence of other ... acts is not admissible to prove the character of a person in order to show action in conformity therewith."

Fed.R.Evid. Rule 404.

In *Sparks v. Gilley Trucking Co., Inc.,* 992 F.2d 50, 51–52 (4th Cir.1993), the court held that evidence of prior speeding convictions in

---

7. In making this determination, the court will consider the factors advanced by the Advisory Committee under Rule 803(8): (1) the timeliness of the investigation; (2) the special skill or experience of the official, if any, involved in the investigation; (3) whether a hearing was held; and (4) possible motivation problems concerning preparation for litigation. *Id.*

a civil case where speeding was alleged should have been excluded. The court stated that "[a]ttempting to prove conduct by showing a character trait is too general and unreliable a method, and therefore it is excluded under the same principle as is reflected in Rule 403—any probative value is 'substantially outweighed by the unfair prejudice.'" *Sparks* at 52.

█ In order to be admissible under Rule 404(b), evidence must (1) be directed toward establishing a matter in issue other than the [party's] propensity to commit the act at issue; (2) show that the other act is similar and close enough in time to be relevant to the matter at issue; (3) be sufficient to support a jury finding that the person committed the other act; and (4) have sufficient probative value so as not to be substantially outweighed by the risk of unfair prejudice. *United States v. Scop,* 940 F.2d 1004, 1009 (7th Cir.1991).

The defendant asserts that just before this accident occurred, plaintiff was seen performing various maneuvers, including 180–degree and 360–degree turns on the Sea–Doo, and that plaintiff's Sea–Doo suddenly turned in a position facing Scott Sheppard's Sea–Doo at the time of the collision. Therefore, defendant asserts, evidence of plaintiff's maneuvers is being offered not to show his propensity for performing these maneuvers, but rather to show that within minutes of, and at the time of, the collision, plaintiff was in fact doing a 180–degree turn.

Defendant is not seeking to show a character trait of reckless conduct on the part of the plaintiff. Rather, defendant is simply seeking to prove plaintiff's conduct shortly before the collision in order to demonstrate that his own negligence was the proximate cause of the collision. *Sparks* does not preclude the admissibility of this evidence; however, the use of the deposition testimony concerning plaintiff's actions prior to May 17, 1992 is too remote in time to be evidence of the facts of the accident, and may be excluded under 404(b) considerations. Plaintiff's motion to exclude evidence of plaintiff's prior conduct is DENIED.

**11.** *Motion in Limine (Opinions on Safe Boating Practices)*

█ The plaintiff moves to exclude evidence as to safe boating practices. Throughout the discovery depositions defense counsel questioned witnesses regarding their opinions on safe boating practices. In addition, defendant proposed in the Pre–Trial Order to question David Price, Wesley W. Moore, Marshall Myers, Kent Buckman, Sr., and Sandra Buckman regarding their opinions on what constitutes safe boating practices.

Two sets of rules govern the question of vessels in the navigable waters of North Carolina. First, the *Inland Navigation Rules of the United States Department of Transportation and the United States Coast Guard* apply to all vessels upon the inland waters of the United States, ..." (p. 3). Second, "The North Carolina boating law applies to all public waters within the territorial limits of the State, ..." *North Carolina Boat Owner's Guide,* p. 1 (1992). It is the judge who explains these "rules of the road" to the jury, not the witnesses. *See generally,* F.J.P.I. 70.06.

"With admiralty jurisdiction comes the application of substantive admiralty law." *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986). The substantive admiralty law applicable to navigation and avoidances of collisions in this case is contained entirely within the federal *Inland Navigation Rules* and N.C. Gen.Stat. § 75A.

Many of the questions posed to and answered by these witnesses were phrased as hypothetical questions, having no basis in the reported observations of those who witnessed the accident. The court therefore ALLOWS in part and DENIES in part the plaintiff's motion to exclude such testimony; provided the testimony by the lay witnesses is not derived from responses to hypothetical questions and is relevant, the witnesses may testify as to their own knowledge of safe boating practices.