**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DOUGLAS STUTTS,
<u>Plaintiff-Appellant,</u>

v.

No. 96-2525

FLUOR DANIEL, INCORPORATED; VIOLA
INDUSTRIES,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-93-1979-3-0)

Argued: June 5, 1997

Decided: September 22, 1997

Before HALL and MURNAGHAN, Circuit Judges, and
GARBIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished opin-
ion. Judge Garbis wrote the opinion, in which Judge Murnaghan and
Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** John Daniel Kassell, SUGGS & KELLY, Columbia,
South Carolina, for Appellant. Heyward Elliott McDonald, MCDON-
ALD, MCKENZIE, FULLER, RUBIN & MILLER, Columbia, South

Carolina, for Appellee Fluor Daniel; Manton McCutchen Grier, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellee Viola. **ON BRIEF:** Gary H. Johnson, II, MCDONALD, MCKENZIE, FULLER, RUBIN & MILLER, Columbia, South Carolina, for Appellee Fluor Daniel; Clarke W. DuBose, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellee Viola.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

GARBIS, District Judge:

On July 10, 1991, Douglas Stutts was severely injured when he fell from a manlift at his employer's paper mill. He brought the instant action against the manlift installer, Fluor Daniel, Inc. ("Fluor Daniel"), and against the manlift manufacturer, Viola Industries ("Viola").

At trial, the district court excluded the testimony of two of Plaintiff's co-workers regarding malfunctions they had witnessed on the same manlift as well as the testimony of Plaintiff's proffered expert witness on manlift manufacturing. At the conclusions of all of the evidence, the district court granted judgment as a matter of law to both Defendants on the ground that there was no evidence of a manufacturing defect and that Plaintiff had failed to prove that any manufacturing defect or negligent installation of the manlift was a proximate cause of the accident.

For the reasons stated herein, we affirm as to the manufacturer but reverse as to the installer and remand for a new trial with instructions to the district court to admit the proffered testimony of Plaintiff's co-employees.

2

I.

A manlift is a large vertical conveyor belt used to transport workers between the floors of a building. The belt is draped over a top drive pulley and wound around a bottom pulley. The bottom pulley can travel several inches up or down in its bearing to maintain tension on the belt. The pulleys are supported by four channel rails,[1] one in each corner, that run the length of the manlift. Handholds and steps are bolted to the belt. Riders mount a step and hold on to a handhold to travel up one side or down the other side. Each step is guided along the channel rails by four rubber rollers. Each floor opening through which the manlift passes is surrounded by guardrails to reduce the likelihood of someone accidentally falling through. The manlift involved in this case was manufactured by Viola and installed by Fluor Daniel. It was placed into operation at the Union company paper mill where Stutts was employed on June 26, 1991.

On July 10, 1991, Stutts was on the fourth floor retrieving a flash-light. He intended to take the manlift to return to the second floor. Ronald Crall, who was working on the second floor, testified that he was looking at a warning tag approximately five to seven feet from the manlift when he felt a vibration or shaking. He looked up and saw Stutts falling head first through the manlift shaft. Wall observed that at no time did the manlift stop moving. No witnesses saw Stutts mount or ride the manlift, and because of the closed head injuries he sustained, Stutts was unable to remember any details about the fall.

Steven Carter, a maintenance employee, testified that he rode the manlift the day before Stutts' fall. He testified that the channel rails were not "plumb" and had numerous friction points which caused the rollers attached to the steps to jam. According to Carter, if a jam occurred on the descending side of the belt, the step would come to a stop while the top drive would continue to rotate and place tension on the belt on the ascending side of the manlift. As a result, the bottom pulley would move upward in its bearing, causing slack to develop in the belt on the descending side. Because the handholds are attached to the belt, slack in the belt would cause a rider to lean backwards. Carter stated that when the bottom pulley reached the physical

_____

[1] Channel rails are vertical stationary sections. (J.A. 85).

3

limit of its movement up, tension would develop on the descending side of the belt that ultimately caused the stuck roller to suddenly break free, accompanied by a shaking or a big jolt.

Stutts presented Gerald Cole as an expert witness. Cole had forty years of experience installing manlifts. For twenty-two years he has been president of a company that specializes in manlift installation and manufacturing of materials handling equipment. Cole testified that when he inspected the manlift after the accident, he found several defects. He stated that a combination of these defects would likely cause a step roller to jam. If the jam occurred on the descending side, it could produce a malfunction like that described by Steven Carter. According to Cole, the belt would bow outward, causing the rider to lean backward. The tension would finally force the step loose with a loud banging noise. This motion, Cole explained, is likely to throw a rider from the manlift.

The court excluded the testimony of two of the Plaintiff's co-employees. The testimony of Michael Lambert (presented outside the presence of the jury) would have been that two or three days before Stutts' fall, Lambert almost fell off the same manlift. Lambert said that he was traveling on the descending side just below the third level floor opening when the step on which he was standing stopped. The belt above continued to move, creating a slack in the belt that was between one and one and a half feet. Lambert was thrown backward, and experienced a violent jerking motion when the step began moving again.

Also outside the presence of the jury, Plaintiff's counsel proffered the testimony of Charles Presson. Presson would have testified that a day or two before Stutts' fall, he was traveling on the manlift in a downward direction just below the third level floor opening. The step on which Presson was standing stopped abruptly, and slack developed in the belt, forcing the handhold to bow outward.

II.

The question of whether the evidence presented is sufficient to create a jury issue is a question of law to be decided by the court, and thus is reviewed de novo. See Anheuser-Busch, Inc. v. L & L Wings,

Inc., 962 F.2d 316, 318 (4th Cir. 1992). In diversity cases, the federal rule governs this issue. See Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield Mut., 6 F.3d 243, 247 (4th Cir. 1993). Under the federal rule, the court must ask whether "there is evidence on which a jury properly can base a verdict." Id. The court must view the evidence in the light most favorable to the party against whom the motion was made, and may not weigh the evidence or assess the credibility of witnesses. See id. at 247-48.

A.

The district court found that Stutts did not present enough evidence to reach the jury on the issue of the manufacturer's liability. Plaintiff contends that this ruling was in error.

At trial, Stutts' expert witness, Cole, testified that the manufacturer, Viola, made its channel rails with splice angles[2] mounted in a crooked fashion. He stated that Viola had welded the splice angles on incorrectly, and that these deformed splice angles, coupled with faulty installation, caused uneven splices where the lengths of channel were joined. The step roller then jammed in one of these rough splices, resulting in the malfunction Cole believed was the cause of Stutts' fall. He also testified that after Stutts' fall, the splice angles had to be remounted on the channel rails.[3]

On cross-examination, however, Cole recognized that the manufacturer's manual directed the installer to align the machine properly and grind the joints smooth, and acknowledged that grinding the splice joints smooth is a standard operating procedure when installing a belt manlift. Moreover, Cole admitted that he could not tell whether

_____

[2] Splice angles are flanges that are welded on to the channel ends so that the manufacturer can bolt various pieces of channel together to form the manlift tracks. (Appellees' Brief at 22).

[3] Appellees argue that the court properly could have rejected Cole's testimony on this point based on the deposition of Larry Barnes and the pictures of the splice angles presented by Viola. (Appellees' Brief at 28-32). Because we draw all reasonable inferences in favor of the Plaintiff, we include this testimony in our consideration of the evidence.

5

proper installation of the manlift may have cured the problem of the rough joints.

Cole's testimony does not amount to substantial evidence of a manufacturing or design defect. Simply put, a manufacturer of a product that is safe when it leaves the manufacturer's control cannot be held liable for injuries caused by negligent installation or improper maintenance by other parties. See, e.g., Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir. 1958); Brannon v. Southern Ill. Hosp. Corp., 386 N.E.2d 1126 (Ill. App. Ct. 1979) (holding that a manufacturer could be held not liable for death caused by a spreader bar left on a dumbwaiter for shipping purposes when the manufacturer had instructed the installer to remove the bar). Here, Stutts produced no testimony that the manlift could not have been safely installed. Accordingly, we affirm the district court's grant of a directed verdict in favor of Viola.[4]

B.

Plaintiff challenges the district court's ruling that Stutts did not produce enough evidence to reach the jury on the issue of proximate cause.

A jury may consider the issue of proximate cause only if the plaintiff "produces evidence demonstrating that [cause] to be at least a reasonable probability rather than merely one of several equally surmisable possibilities." Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield, 6 F.3d at 247. Because of his amnesia and the lack of eyewitnesses, Stutts needed to rely on circumstantial evidence to meet this burden.

At trial, Plaintiff presented his theory that a step-jamming malfunction of the type described by Cole was the cause of his fall and his injury. Ron Crall testified that the manlift vibrated, shook, and jerked just before Stutts fell. According to Steve Carter and Gerald Cole (and Michael Lambert, whose testimony was excluded), this vibration is a hallmark of the malfunction Plaintiff believes occurred. Cole also tes-

_____

[4] The question of Cole's qualification as an expert in manlift manufacturing is, therefore, rendered moot.

6

tified that the manlift's lack of straight, smooth joints made it susceptible to this type of malfunction.

Defendants propose other possible explanations for the fall. Defendants argue that it was equally likely that Stutts misstepped, had a fainting spell, or caught a piece of his clothing or equipment on the manlift. There is no evidence that would require a reasonable jury to accept these theories. In fact, the evidence suggests that these events were unlikely to have occurred. Stutts testified that on the day of the fall, he felt physically fine and showed no signs of fatigue or illness. He had no medical condition or history that would make him likely to faint. Although at the time of the fall Stutts was wearing several items on his person in violation of safety regulations pertaining to manlifts, Stutts testified that he was experienced in wearing such items while riding the manlift. Moreover, none of this equipment was stretched or pulled, or otherwise indicated that it had been a cause of the accident.

Stutts' burden of proof does not require him to eliminate every possible cause of his fall. He is merely required to demonstrate that it is reasonably probable that the installation defects caused his injury. Given that the number of possible explanations of the accident is limited, the malfunction theory, as explained by Cole and corroborated by Carter, meets that standard. We conclude that Stutts has presented enough evidence to render it reasonably probable that negligence in installation was a proximate cause of the accident. The question of proximate cause should have been submitted to the jury. We reverse and remand for this purpose.

III.

Plaintiff appeals the district court's exclusion of the testimony of Charles Presson and Michael Lambert. These two witnesses would have testified that they had recently experienced manlift malfunctions on the same manlift Stutts had been riding on the day of the accident. The district court's evidentiary rulings are reviewed under an abuse of discretion standard. See, e.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 126 (4th Cir. 1995).

Because evidence of prior accidents can be prejudicial, "it is well settled that, before evidence of other accidents can be admitted into

7

evidence, plaintiff must present a factual foundation for the court to determine that the other accidents were `substantially similar' to the accident at issue." Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995); see also Renfro Hosiery Mills Co. v. National Cash Register Co., 552 F.2d 1061, 1068-69 (4th Cir. 1977). If the events are sufficiently similar in time, place, or circumstances, however, such evidence is relevant and admissible to show causation. See, e.g., Anderson v. Whittaker Corp., 894 F.2d 804, 813 (6th Cir. 1990); Ramos v. Liberty Mut. Ins. Co., 615 F.2d 334, 338-40 (5th Cir. 1980). As the Eastern District of Kentucky succinctly explained in Rhodes v. Michelin Tire Corp., 542 F. Supp. 60, 62 (E.D. Ky. 1982):

> [w]ith regard to the problem of similar accidents or product failures, few things could be more relevant in a products action than the occurrence or the non-occurrence of other accidents or failures under similar circumstances. Clearly, evidence of the existence or non-existence of such failures would tend to make the presence of a design defect more or less probable than it would be without the evidence. This is all that is required by Rule 401. Those courts which have passed on the issue have uniformly admitted such evidence where there was a sufficient similarity of conditions and the evidence was not so technical as to cause undue confusion or waste of time.

In the case at bar, the two incidents described by Lambert and Presson were similar to Stutts' fall in several respects. Both malfunctions involved the same manlift Stutts had been riding, and both occurred within three days of Stutts' fall. Both riders experienced difficulty on the descending side of the belt just below the third floor opening. Stutts fell from the descending side of the belt somewhere between the fourth and second floors. In addition, Lambert described a violent jerking motion that corresponded to the shaking or vibration observed by Ronald Crall at the time of Stutts' fall.

Of course, there are potential distinctions between the events described by the proffered witnesses and the accident at issue. However, the testimony of Lambert and Presson is both relevant and admissible. In the context of the instant case, it was an abuse of dis-

8

cretion to have excluded the testimony. On retrial it should be admitted for jury consideration.

In summary, we hold that:

1. The district court is AFFIRMED as to its grant of judgment as a matter of law to Defendant Viola Industries.

2. The district court is REVERSED as to its grant of judgment as a matter of law to Defendant Fluor Daniel, Inc.

3. This case shall be REMANDED for a new trial of Plaintiff's claims against Defendant Fluor Daniel, Inc.

4. The proffered testimony of Charles Presson and Michael Lambert shall be admitted in evidence.

AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

9