**Paul STANCZYK, Plaintiff,**

v.

**BLACK & DECKER, INC., a foreign corporation, and DeWalt, a division of Black & Decker, Inc., Defendants.**

**No. 91 C 4054.**

United States District Court, N.D.Illinois, E.D.

Nov. 10, 1993.

Mark William Demisch, Barclay & Demisch, Ltd., Michael John Kedzie, Olita, Saywitz, Kedzie, Tatooles & Foley, Chicago, IL, for plaintiff.

Stephen Charles Schulte, Brant Clifford Weidner, Winston & Strawn, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Tycho Brahe (1546–1601) was the last great astronomer who opposed Copernicus on the question of whether the earth moved about the sun. Brahe believed that if the earth moved (as Copernicus said it did) then a stone dropped from a tower would not fall down to a spot directly below the point it was dropped. The stone would fall somewhere ahead or behind that point because the earth would have moved slightly during the period of its fall. Several of his contemporaries knew he was wrong, they knew that the stone as well as the tower would participate in the motion of the earth at least when one has a tower of less than staggering height. And there was a way to test all this in an experiment, one could drop a stone from the mast of a moving ship and see where it landed or one could fire a bullet straight up from a moving ship and see where it landed. *See* J.L.E. Dreyer, *A History of Astronomy From Thales to Kepler* (1953) pp. 356–362.

Tycho Brahe, in fact, spent much of his life on a boat commuting to his observatory. Yet, as Dreyer, a great historian of science, noted:

> ... it is very curious that not even he, who taught astronomers to seek for the laws of planetary motion through observations, seems to have thought of making the simple experiment of dropping a pebble from the top of the mast of a swiftly moving vessel. He might have done it scores of times while passing backwards and forwards between his island and the shores of the Sound; yet he boldly asserts that a bullet fired vertically upwards from the deck of a moving ship will not fall down straight again, as some people believe, but the faster the ship moves the greater the distance will be. Though Tycho was fond of talking about the connection between heavenly and earthly (i.e. chemical) research, it did not occur to him to verify the truth of his assertion by experiment.

Galileo sometime later made the experiment.

The question before me is whether plaintiff's expert is a modern version of Tycho Brahe and, if so, does that mean his testimony ought to be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The underlying case is easy to describe. Paul Stanczyk was using a Black & Decker miter saw and "got his right forearm into the saw blade." He says Black & Decker is liable because the saw guard did not provide adequate protection. The guard may leave as much as 2.25 inches exposed. No one contends a usable saw could be designed without some blade exposure, but Donald Clark, plaintiff's expert says that a guard could be designed which would leave only an ⅛ or 1/16 of an inch exposed. If he is right there is, arguably, a design defect for which Black & Decker is liable. But Black & Decker argues that Clark has no scientific (or technical) basis for saying what he says and he ought not say it to the jury.

Donald Clark, a mechanical engineer who worked for Black & Decker and other companies, is an experienced designer of saws and guards. He has testified as an expert witness. At deposition, he said that careful engineering, using well established principles and non-recent technology, would have produced much less blade exposure and a safer device. More precisely, what Clark said was "I feel comfortable that I could greatly minimize the 2¼ inch opening ... I've come up with a concept ... That concept is not fully defined, fully proven and fully documented ... That concept is basically the guard as it is now extended down further so that when ... the blade is in the full down position, that

edge of the lower blade guard just misses the table top. When I say just misses, I'm talking $\frac{1}{16}$ of an inch, $\frac{1}{8}$ of an inch … an area small enough that I would not be concerned with somebody even putting their little finger under that area." Donald Clark came up with the concept at the time he was looking at Stanczyk's saw. The deposition continued:

Q. Have you done any engineering analysis to see whether or not your concept is feasible from an engineering standpoint?

A. I have done enough analysis to say with a reasonable degree of engineering certainty that I could complete the design doing what I just said it would do.

Now, to take that from where I am now to a complete documented design in several hundred hours of engineering work.

Q. So then the answer to my question is you have not done the engineering analysis necessary to determine whether or not your concept would work?

A. I have not completed it, that is correct.

Q. Well, what have you done other than just think about it?

A. Basically that was it.

Q. How much time did you spend thinking about that concept?

A. Maybe an hour while I was doing other things in some cases.

Q. While you were doing other things—

A. While I was inspecting the saw I was thinking about this and looking at, gee, why can't this guard be extended down further, why does it have to stop at this point when this blade is in the full down position.

Q. And so it was during this inspection of yours, during that hour, or and a half, that you came up with the concept that you have described?

A. That's when I came up with the concept, yes. Subsequent to that time I have done more thinking about it and thinking in more detail.

Q. Tell me what thinking that you have done since April 4, 1993, about your concept of extending the guard down further.

A. I think I've defined the concept earlier. I'm at the point now that I would be quite comfortable in somebody hiring me with the goal of completing this design. I would be willing to do it on a contingency basis that I wouldn't get paid anything if it didn't work.

Against Donald Clark, Black & Decker offered Dr. James Miller, another mechanical engineer, who swears that the existing design is optimally designed for a saw intended, as this one is, to make both miter and bevel cuts. He also found that the guard complies with existing Underwriter's Laboratories Standards. More to the point of this motion, Dr. Miller prepared charts and diagrams showing that Clark's proposed design will not work on bevel cuts—the guard may contact the blade and the saw will not cut 2 × 4s or larger pieces of wood. Further, the Clark guard, which depends on gravity to put and keep it in its place, is used on no other saw intended for the same uses. A Black & Decker employee, also an expert, agreed with Dr. Miller.

Donald Clark offered nothing to rebut the charts and drawings.

*Daubert* teaches that I must consider certain factors. In my view (and I think the Court's) the most important factor is whether the technique (or theory) being advanced by the expert can be or has been tested. The answer here is that it can be and, to some extent, was, and it failed. Clark offered no testable design to support his concept. And the history of engineering and science is filled with finely conceived ideas that are unworkable in practice. There is a high potential rate of error for mechanical concepts offered engineering analysis. And the evidence here is that Clark's design will not work.

One must consider whether there is peer review and publication of the technique. There is none, and the closest proxy for it, industry practice, produces no evidence of the use of gravity guards for this type of saw. This rules out the possibility of general acceptance, another factor to be considered. Finally, to the extent there are controlling design standards, they offer no support to Clark's opinion.

Plaintiff argues that the net effect of this scrutiny of his expert evidence is to put the claim beyond his financial ability to pursue. He would have to pay his expert witness $20,000 to $40,000 to come up with a design. This is true, but it is the very nature of Rule 702 and *Daubert* that requires these expenditures. Proof of any kind is often expensive to gather. Scientific reliability and validity in our times is seldom cheap, but at least when once established it can be used again and again at little marginal cost.[1] I suspect nothing raises the overall cost of proof more than the rule against hearsay which requires litigants to bring live witnesses in to court, but it is pointless to argue against proof by rank hearsay simply because the alternative is very expensive.

Clark's opinion does not pass muster under *Daubert's* standards and he does stand in Tycho's shoes, who, like Clark, would "feel comfortable" in his conclusions. Clark is redeemed a bit by some honesty. He tells us his concept is "not fully defined, fully proven and fully documented." It would have been better to say his concept is barely defined, utterly unproven and not documented at all.

I grant the motion to exclude the evidence of Donald Clark.

---

**1.** There is a suggestion that this may be the case here because of other litigation over saws, but proof in other cases involved a very different model of saw.