**DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE,
Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION,
Defendant.**

**Civil A. No. 93–1321 (HHG).**

United States District Court,
District of Columbia.

Nov. 14, 1994.

Order Denying Intervention and
Reconsideration Dec. 7, 1994.

Robert Felix Bauer, Barry Jay Reingold, Perkins Coie, Washington, DC, for Democratic Senatorial Campaign Committee.

Richard Blair Bader, Franciszka A. Monarski, Stephen E. Hershkowitz, Federal Election Commission, Washington, DC, for Federal Election Commission.

Jan W. Baran, Wiley, Rein & Fielding, Washington, DC, for National Republican Senatorial Committee.

*Opinion*

HAROLD H. GREENE, District Judge.

Plaintiff, the Democratic Senatorial Campaign Committee ("DSCC"), disputes the dismissal·by the Federal Election Commission's ("FEC" or "Commission") of a complaint filed by plaintiff against the National Republican Senatorial Committee ("NRSC"). Plaintiff has requested both declaratory and injunctive relief; it asks the Court to declare that the Commission's dismissal of the DSCC's complaint was contrary to law, and to direct the Commission to initiate enforcement proceedings against the NRSC. Before the Court are the parties' cross motions for summary judgment.

I. *Background*

The central dispute in this case is whether the NRSC violated the Federal Election Campaign Act ("FECA" or "the Act"), 2 U.S.C. § 431 *et seq.*, by exceeding FEC spending limits during the 1992 United States Senate race in Georgia.

The FEC enforces spending limits for federal elections. Any person who believes that the Act has been violated may file an administrative complaint with the Commission. After receiving an answer from the respondent, the Commission's General Counsel prepares a report for the Commission, and recommends whether the Commission should find "reason to believe" that the Act has been violated. A vote of at least four commissioners is necessary to find a "reason to believe." If the Commission does so find, it initiates formal enforcement proceedings. 2 U.S.C. § 437g(a).

For the 1992 U.S. Senate race in Georgia, both the NRSC and the DSCC were permitted to contribute $535,608 in support of their respective party's candidates. Prior to November 3, the scheduled general election date, the NRSC had exhausted its spending authority, while the DSCC still had $200,000 remaining. On November 3, Democrat Wyche Fowler, the incumbent, received 49% of the vote. Republican Paul Coverdell received 48%. An independent candidate received the remaining 3%.

Georgia's statute governing the election of United States Senators provides that, if no one candidate receives an absolute majority, a second election is to be held between the candidates receiving the two highest numbers of votes. O.G.C.A. § 21-2-501. Because no candidate received an absolute majority in the particular election at issue here, a second election was scheduled for November 24, and a question thus arose as to how much the committees could contribute to their particular candidate's campaign with respect to this second election. Under Commission rules, if the November 24 election was a "general election," each committee would be permitted a new full expenditure of $535,608. If the November 24 election was a "runoff election," each committee would be permitted to spend only what it had left over from the November 3 election.

On November 6, the NRSC requested an advisory opinion from the Commission as to how to classify the November 24 election. The General Counsel, in a proposed draft response, determined that the November 24 election was not a general election. (This, of course, would have had the effect of denying the NRSC request for a second, or new, $535,608 expenditure.) However, the Commission itself, which is composed of three members from each political party, split along party lines over whether to adopt the General Counsel's proposal. Since four votes are required to issue an advisory opinion, the Commission took no action. The NRSC thereafter spent almost the full amount permitted for a general election. The DSCC, on the other hand, limited its expenditures to the roughly $200,000 it had remaining from its expenditures allowed for the November 3 election; it spent no "general election" funds. Paul Coverdell, the Republican candidate,

won the November 24 election, and became the United States Senator for Georgia.

On November 19, 1992, the DSCC filed a complaint with the Commission, alleging that the NRSC had violated the Act by exceeding the permitted spending limits for the November 24 election. The General Counsel, adhering to his previous position, recommended that the Commission find reason to believe that the NRSC had violated the Act. This recommendation was made on the basis that the November 24 election was a runoff election, not a general election, and that the committees could therefore spend only the remainder of the funds left over from the November 3 election. The Commission once again split along party lines. Again, because four votes are required for the Commission to find a "reason to believe" that the Act has been violated, it dismissed the complaint. It is that dismissal that the DSCC has brought before this Court in this action.

## II

The standard of review for determining whether the Commission improperly dismissed the DSCC's complaint is whether the body acted in a manner that is "contrary to law." 2 U.S.C. § 437g(a)(8)(C). A Commission decision is contrary to law if its dismissal (1) rests on an impermissible interpretation of the Act, or (2) was arbitrary, capricious, or an abuse of discretion. *Orloski v. Federal Election Commission*, 795 F.2d 156, 161 (D.C.Cir.1986). A judicial determination of whether the Commission's interpretation of the Act was impermissible is highly deferential to the agency. "[I]f the meaning of the statute is not clear, a reviewing court should accord deference to the Commission's rationale." *Federal Election Commission v. National Republican Senatorial Committee*, 966 F.2d 1471, 1476 (D.C.Cir.1992).

In this case, the Commission's inability to find a reason to believe that the NRSC violated the Act is the equivalent of a finding that the November 24 election was a general election.[1] The parties do not contest that, if that election was a runoff and not a general election, the NRSC exceeded the spending limits. The question, then, is whether the classification of the November 24 election as a general election, and not a runoff, rests on a permissible interpretation of the Act.

## III

FEC regulations define a general election as follows.

(1) an election held in even numbered years on the Tuesday following the first Monday in November is a general election. (2) An election which is held to fill a vacancy in a Federal office (i.e., a special election) and which is intended to result in the final selection of a single individual to the office at stake is a general election.

11 C.F.R. § 100.2(b). A runoff election is defined as follows.

*Runoff election* means the election which meets either of the following conditions: . . . (2) The election held after a general election and prescribed by applicable state law as the means for deciding which candidate should be certified as the officeholder elect, is a runoff election.

*Id.* at § 100.2(d).

Although, as indicated, the Court considers that it must accord deference to the FEC's interpretation of its regulations, it finds itself in agreement with the Commission's General Counsel and holds that under the plain meaning of these regulations the November 24 election was a runoff and not a general election.

First, most broadly, the November 24 election cannot qualify as a general election, since it was not held in an even numbered year on the Tuesday following the first Monday in November—the test for a general election nationally and in the state of Georgia.

Second, and perhaps more importantly, the November 24 election was not designed to fill a "vacancy" as described in 11 C.F.R.

---

**1.** The focus of judicial review is the stated reasons of the "controlling group." Where the Commission is deadlocked, the controlling group comprises the three commissioners who did not find a reason to believe the NRSC violated the Act. *FEC v. NRSC*, 966 F.2d at 1476. Here, those three commissioners found that the November 24 election was a general election.

§ 100.2(b)(2). A vacancy occurs when an office is no longer occupied or when it is occupied by a person who has not been authorized by the voters to fill that office, such as when the elected officeholder dies or resigns. Neither of those situations existed in Georgia in November of 1992. The Commission contends that a vacancy was created when Georgia failed to elect a Senator on November 3.[2] However, there is no common sense or regulatory basis on which it could be held that a vacancy exists when the sitting officeholder has an additional two months at minimum in which to occupy that office. Indeed, had Senator Fowler ultimately prevailed electorally, he would of course have had six years and two months in the office of United States Senator. In short, there was no "vacancy" and the November 24 election therefore could not be regarded as a "general election."

Third, even if the November 24 election could be seen as filling a vacancy, and thus possibly fitting within the definition of a general election, that election fits far more snugly and directly into the regulatory definition in 11 C.F.R. § 100.2(d) of a runoff election, as follows. The November 24 election was "held after a general election," the November 3 election; it was "prescribed by applicable state law;" and it was the means for deciding which candidate, Coverdell or Fowler, should be certified as the officeholder elect.

The Commission argues that an election could qualify as both a general election and a runoff election. On that basis, if this were the case, even though the November 24 election was a runoff, it was reasonable for the controlling group to find that it was also a general election. But the language of the regulations provides no support for this assertion. The regulations do not state that a runoff election could at the same time be a general election. In defining other types of elections, the regulations clearly state where

an overlap *is* possible. For example, under the definition of "special election," the regulations state that, "[a] special election may be a primary, general, or runoff election...." 11 C.F.R. 100.2(f). Given that the regulations do explicitly state where an overlap exists among classifications of elections, the failure of the regulatory scheme to state that a runoff election could also be a general election is strong evidence that such a conclusion may not be reached here.

The November 24 election was a general election or a runoff election—not both—and for the reasons explained above, under the regulations that election could only be regarded as a runoff election. The Commission therefore erred in not finding that the NRSC violated the Act when that year it expended funds beyond the $535,608 allowed for the general election. The Court will therefore direct the Commission to vacate its dismissal of the DSCC's complaint, and proceed thereafter in an appropriate manner.[3] The DSCC's motion for summary judgment will be granted by an Order issued contemporaneously herewith.

*Order on Reconsideration*

The Court granted summary judgment in favor of the plaintiff in this matter on November 14, 1994, and directed the defendant to initiate enforcement proceedings within 30 days against the National Republican Senatorial Committee ("NRSC"). The NRSC has now filed a motion for leave to intervene, an emergency motion to stay the November 14 Order, and a motion to reconsider and dismiss. The plaintiff has opposed these motions. The defendant has opposed the NRSC's motion to intervene, and has suggested that the Court stay the 30–day deadline imposed by the November 14 Order until all pending motions are resolved.

 The Court finds that the NRSC's motion to intervene as a party, filed four

2. The three-person Commission "controlling group" was split between two commissioners who issued one statement of reasons explaining their position, and one commissioner who issued his own statement of reasons. Nevertheless, whatever the reasoning of the individual commissioners, it is the aggregate of the three members that prevailed under the regulations.

3. In fashioning an appropriate remedy, the Commission might take into account its less than lucid action with respect to its decision whether to issue an advisory opinion.

days after the final judgment in this action, is untimely. *See Dimond v. District of Columbia,* 792 F.2d 179, 193 (D.C.Cir.1986). Moreover, the NRSC's alleged interest in intervening, to brief the constitutionality of the Federal Election Campaign Act, is not ripe as the defendant has not yet determined what specific action it will take against the NRSC. Accordingly, it is this 6th day of December, 1994

ORDERED that the National Republican Senatorial Committee's motion for leave to intervene be and it is hereby DENIED; and it is further

ORDERED that the National Republican Senatorial Committee's motion to reconsider and dismiss and its emergency motion to stay the November 14 Order be and they are hereby DENIED as moot; and it is further

ORDERED that the Federal Election Commission shall conform with the November 14 decision within 30 days of the issuance of this Order, and that the Federal Election Commission's suggestion that the Court stay the 30–day deadline is moot.

Dated Dec. 7, 1994