Constance **DEIMER**, Plaintiff–Appellant,

v.

**CINCINNATI SUB–ZERO PRODUCTS, INCORPORATED**, Defendant–Appellee.

Nos. 94–2141, 94–3523 *.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 4, 1994.**

Decided July 5, 1995.

---

* On November 4, 1994, these cases were consolidated for disposition by the court on its own motion.

** After preliminary examination of the briefs, the court notified the parties that it had tentatively

Robert A. Holstein (submitted), David L. Poindexter, Eileen C. Urban, Holstein, Mack & Klein, Chicago, IL, for Constance Deimer.

Jeffrey Singer, Paul E. Wojcicki, Segal, McCambridge, Singer & Mahoney, Chicago, IL, for Cincinnati Sub–Zero Products, Inc.

Barbara J. Anderson, John A. Rupp, Coffield, Ungaretti & Harris, Chicago, IL, for Product Liability Advisory Council, Inc., amicus curiae.

Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Constance Deimer was a surgical nurse at Northwestern Memorial Hospital in Chicago, Illinois. On March 21, 1988, Ms. Deimer was injured while moving a Blanketrol Hypo–Hyperthermia machine manufactured by Cincinnati Sub–Zero Products, Inc. ("Sub–Zero") to an operating room. Just before the injury, the power cord for the machine was lying across the top of the machine. As Ms. Deimer began to push the machine to the operating room, the power cord fell off the machine, and she stumbled on it. Ms. Deimer consequently bumped into the machine and fell. The 185–pound machine (filled with several gallons of water) then became unstable and fell on her knee.

Ms. Deimer brought an action against Sub–Zero on the alternative theories of strict liability and negligent product design. She alleged both that the machine was top-heavy

concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a), Cir.R. 34(f). No one has filed such a statement. The appeal is therefore submitted for decision on the briefs and record.

and unstable, and that the machine had an inadequate and detachable cord wrap. The original action was brought in Illinois state court, but Sub–Zero removed the suit to the district court on the ground that the parties were of diverse citizenship. *See* 28 U.S.C. § 1441.

The district court dismissed the strict liability claim. In regard to the claim concerning the negligent product design of the power cord, the district court granted partial summary judgment for the defendant. The court held that Ms. Deimer's deposition testimony that she did not look for the cord-storage wrap device on the day of the accident precluded any claim that this alleged defect was the proximate cause of her injury. Trial was conducted on the remainder of the negligence count. However, Ms. Deimer's expert witness was prohibited from testifying at trial on the cord wrap defect issue. The district court denied Ms. Deimer's motion, accompanied by a clarifying affidavit, to reconsider the grant of partial judgment, and ultimately the district court granted judgment as a matter of law for Sub–Zero under Fed.R.Civ.P. 50.

On the first appeal to this court, we affirmed the grant of judgment as a matter of law, but remanded the denial of Ms. Deimer's motion to reconsider the partial summary judgment. We held that "in light of [Ms. Deimer's] clarifying affidavit," summary judgment concerning the negligent design of the cord wrap device was not appropriate. *Deimer v. Cincinnati Sub–Zero Prods., Inc.,* 990 F.2d 342, 346 (7th Cir.1993).

After preliminary motions had been addressed, a jury trial was held on April 12, 1994. During the trial, the district court granted Sub–Zero's oral motion to strike the testimony of Ms. Deimer's expert witness, Roland Ruhl. The court then granted Sub–Zero's motion for judgment as a matter of law. In an oral rendition, the district court, relying on *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), held that Dr. Ruhl's testimony was merely subjective opinion, lacking any scientific methodology. The district court was of the view that Dr. Ruhl had failed to substantiate his opinion on the basis

of any scientific research. The court also held that Dr. Ruhl's analysis had not been applied, in a meaningful way, to the facts of the case. It concluded that "[t]here is simply no evidence from which a rational jury could conclude that this was an unsafe machine when it left their possession, control and manufacture, that it was unsafe for its intended use or that they should bear liability for what happened here." Tr. III at 458. Ms. Deimer now appeals the judgment of the district court and submits that the court erred in its exclusion of Dr. Ruhl's testimony and the consequent granting of judgment as a matter of law to the defendant.

## DISCUSSION

### 1.

◼ Recently, this circuit made clear that a federal standard of review governs the adjudication of a motion for a judgment as a matter of law:

> [I]t is entirely consistent to say that although state law defines the elements of a claim and the burden of persuasion, federal law defines the standard for evaluating the sufficiency of the evidence. If reasonable persons could not find that the evidence justifies a decision for a party on each essential element, the court should grant judgment as a matter of law—before trial under Rule 56, later under Rule 50, and using the same federal standard each time. By linking the standard for summary judgment to the standard for overturning a verdict, *Anderson* and *Celotex* leave no other option. We now adopt the federal reasonable-person standard across the board: pre-trial, mid-trial, post-trial, and on appeal, for evaluating both the merits and the quantum of relief. Contrary decisions are no longer authoritative.

*Mayer v. Gary Partners & Co.,* 29 F.3d 330, 335 (7th Cir.1994). We must view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists "any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed." *Fulk v. Illinois Cent. R.R.,* 22 F.3d 120, 124 (7th Cir.), *cert. denied,* —— U.S. ——, 115

S.Ct. 193, 130 L.Ed.2d 125 (1994). In applying this standard, our review is de novo. *Id.* at 123 (citing *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 884 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993)).

In *Daubert,* the Supreme Court of the United States held that the trial court must, under Rule 702 of the Federal Rules of Evidence, exercise "some degree of regulation of the subjects and theories about which an expert may testify." —— U.S. at ——, 113 S.Ct. at 2795.[1] The Court stated that an expert scientific opinion must be grounded in the "methods and procedures of science," and must consist of more than simply "subjective belief or unsupported speculation." *Id.* The Court added:

> [A]n inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Id.*

Our case law has applied *Daubert* by adopting a two-step methodology for the district courts to employ in fulfilling their "gatekeeping function" under Fed.R.Evid. 702. First, the district court must determine "whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" *Porter v. Whitehall Lab.,* 9 F.3d 607, 614 (7th Cir.1993) (quoting *Daubert,* —— U.S. at ——, 113 S.Ct. at 2795). Second, the district court has to "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying." *Id.* at 616.

In reviewing the district court's fact-specific application of the approach mandated by *Daubert,* we must apply a deferential standard of review. A "decision to allow expert testimony is within the broad discretion of the trial judge and 'is to be sustained on appeal unless manifestly erroneous.'" *Bradley v. Brown,* 42 F.3d 434, 437 (7th Cir.1994) (quoting *United States v. Daccarett,* 6 F.3d 37, 58 (2d Cir.1993) (citation omitted), *cert. denied,* —— U.S. ——, ——, ——, 114 S.Ct. 1294, 1295, 1538, 127 L.Ed.2d 648, 648, 128 L.Ed.2d 190 (1994)).

### 2.

We begin with the first of the two inquiries required by the *Daubert* methodology. As we noted in *Porter,* 9 F.3d at 615, and again in *Gruca v. Alpha Therapeutic Corp.,* 51 F.3d 638, 643 (7th Cir.1995), *Daubert* set forth several nonexclusive guideposts to assist the district courts in determining whether the proffered scientific expert testimony fairly can be characterized as a scientific opinion: whether the proffered conclusion lends itself to verification by the scientific method through testing; whether it has been subjected to peer review; whether it has been evaluated in light of the potential rate of error of the scientific technique; and whether it is consistent with the generally accepted method used for gathering the relevant scientific evidence. *See also United States v. Pierre,* 47 F.3d 241, 243 (7th Cir.1995); *Bradley,* 42 F.3d at 437.

Turning to the proffered testimony in the case before us, we certainly cannot say that the district court abused its discretion in deciding that the testimony could not be characterized as scientific. At the outset, it is important to note that the record supports the district court's conclusion that the witness did not conduct any studies or analysis to substantiate his opinion. The district court stated, "There is no supporting methodology or protocol of any kind to render his opinion reasonable or credible. There is not any foundation for him to say how this acci-

---

1. Fed.R.Evid. 702 provides:

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

dent happened, and particularly by virtue of the manufacturer's power strap and cord and the manner in which it was affixed to the machine." Tr. III at 451. The witness proffered unverified statements that were unsupported by any scientific method. This type of unsubstantiated testimony plainly provides no basis for relaxing the usual first-hand knowledge requirement of the Federal Rules of Evidence on the ground that the expert's opinion has a reliable basis in knowledge and experience of his discipline. *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796. Indeed, this situation is not unlike the situation reviewed by this court in *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). There, the plaintiff's expert witness, a physician, did not establish a proper scientific basis for his opinion. Rather, he relied on his personal observation of cataracts to determine that the plaintiff's cataracts were induced by radiation. We held, however, that personal observation was not sufficient to establish a methodology based in scientific fact. Because the physician produced no "personal study or experiments that otherwise would justify his conclusions that Mr. O'Conner's cataracts are radiation-induced," *id.* at 1107, we found no error in the district court's determination that the doctor's expert testimony was inadmissible. *Id.*

Even assuming, *arguendo*, that Dr. Ruhl's testimony was properly grounded in scientific methodology, we still would have to conclude that the district court acted within its discretion in deciding to exclude the testimony. The second step of the *Daubert* inquiry requires that the district court determine whether the testimony would assist the trier of fact in understanding the evidence. The Supreme Court stated that scientific testimony must "fit" the issue to which the expert is testifying to the extent that it is tied to the facts of the case and will aid the jury in resolving a factual dispute. *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796; *see also Bradley*, 42 F.3d at 437. Here, the witness did not have the requisite experience to assess the unit's suitability for its intended purpose within the hospital environment or to assess its adherence to the prevailing standards for similar machines. *See Porter*, 9 F.3d at 616. Ms. Deimer's witness, Dr. Ruhl, had the responsibility to apply his analysis to the facts of this case—a case involving mobile medical equipment. Because of his lack of experience, this responsibility was not fulfilled. *See* Tr. III at 454. Consequently, there was no "fit" with Dr. Ruhl's testimony, and the district court properly precluded the testimony under the second-step of the *Daubert* inquiry. The district court acted within its permissible discretion in concluding that this testimony would be of no help to the trier of fact in evaluating the evidence.

The excluded submission was the only proffered evidence that Ms. Deimer was injured due to the negligent design of the restraining cord wrap. Once that submission was stricken, there was no evidence of the requisite causation and the district court was constrained to conclude that Ms. Deimer could not prove causation. There was insufficient evidence to permit a rational jury to conclude that the Blanketrol "was an unsafe machine when it left [Sub–Zero's] possession, control and manufacture, that it was unsafe for its intended use or that [Sub–Zero] should bear liability for what happened here." Tr. III at 458. Accordingly, the district court correctly entered a directed verdict for Cincinnati Sub–Zero.

### 3.

■ Ms. Deimer also requests that we review the district court's award of costs. Initially, Sub–Zero requested $4,551.81 in costs. After thoughtful review, the district court reduced the demand by $1,134.23, and allowed costs totalling $3,417.58. Such a careful evaluation does not evidence an abuse of discretion. Under Fed.R.Civ.P. 54(d), district courts enjoy wide latitude in determining and awarding reasonable costs. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir.1991); *see also Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 430 (7th Cir.1989). A district court simply needs to determine that expenses are allowable cost items, and that the amounts are reasonable and necessary. Given that statutory authority exists for a particular item to be taxed as a cost, a dis-

trict court's determination that a cost is reasonable and necessary will not be overturned by this court absent clear abuse of discretion. *Id.* Here, the district court carefully indicated, in a written opinion, how the costs ultimately taxed were reasonably incurred. This is a sufficient analysis under controlling circuit case law. *See SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 944 (7th Cir. 1988), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989).

## Conclusion

Accordingly, the judgments of the district court are affirmed.

AFFIRMED.